******************************************
    The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

    All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

    The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.
******************************************

DAMON BIGELOW *v.* COMMISSIONER
OF CORRECTION
(AC 37565)

Alvord, Keller and Dennis, Js.

*Syllabus*

The petitioner, who had been convicted, on a plea of guilty, of several
criminal and motor vehicle charges, filed a second petition for a writ
of habeas corpus, claiming that his criminal trial counsel, Z, and his first
habeas counsel, T, had rendered ineffective assistance. The petitioner
alleged, inter alia, that T failed to raise claims that Z improperly advised
and inadequately represented him during plea negotiations and during
his plea canvass, and failed to file a motion for an examination for entry
into a certain diversionary substance abuse program. The petitioner also
alleged that T failed to raise a claim that Z was ineffective for failing
to request three days of presentence confinement credit. The habeas
court rendered judgment denying the petition and, thereafter, denied
his petition for certification to appeal from the habeas court's judgment.
On appeal to this court, the petitioner claimed, inter alia, that the habeas
court had abused its discretion in denying his petition for certification
and improperly denied his habeas petition. *Held* that the habeas court
did not abuse its discretion in denying the petition for certification to
appeal, as the petitioner failed to demonstrate that the issues he raised
were debatable among jurists of reason, that a court could resolve those
issues differently, or that the questions he raised deserved encourage-
ment to proceed further, and, accordingly, his appeal was dismissed:
the record supported the habeas court's factual findings underlying its
conclusion that Z provided appropriate advice pertaining to the petition-
er's guilty plea, as Z testified about the petitioner's willingness to accept
certain of the state's plea offers, and about matters that Z generally
discusses with clients, such as the petitioner, in preparation of a plea
canvass, including those pertaining to the charges against them and the
possible sentences they could receive; moreover, notwithstanding the
petitioner's claim that had Z failed to adequately investigate the death
of a certain witness on whom the state relied, significant other evidence
supported the petitioner's underlying convictions, and nothing in the
record suggested that the petitioner would have opted for a trial, as he
had several pending cases that exposed him to significant jail time;
furthermore, the court's findings with respect to the petitioner's claim
regarding Z's failure to file a motion for examination for entry into the
substance abuse program were not clearly erroneous, as the court could
credit Z's testimony that no information was presented to him that would
support a good faith basis to request such an examination, and Z did
not improperly fail to seek three days of presentence confinement credit
for time that the petitioner spent in lockup, as his discharge date would
have remained unchanged because his longest concurrent sentence was
not the one to which the credit applied.

Argued April 5—officially released August 1, 2017

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district
of Tolland and tried to the court, *Fuger, J.*; judgment
denying the petition; thereafter, the court denied the
petition for certification to appeal, and the petitioner
appealed to this court. *Appeal dismissed.*

*David B. Rozwaski*, assigned counsel, for the appel-
lant (petitioner).

*Nancy L. Chupak*, senior assistant state's attorney,
with whom, on the brief, were *Stephen J. Sedensky*

*III*, state's attorney, and *Angela R. Macchiarulo*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

DENNIS, J. The petitioner, Damon Bigelow, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his second postconviction petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) abused its discretion in denying his petition for certification to appeal and (2) improperly denied his petition for a writ of habeas corpus in which he claimed that counsel in both his underlying criminal prosecution and his first habeas proceeding rendered ineffective assistance. Because the petitioner has failed to demonstrate that the habeas court abused its discretion in denying the petition for certification to appeal, we dismiss the appeal.

The following facts underlying the petitioner's convictions were set forth previously by this court. "In early 2008, the petitioner was a defendant in a number of criminal and motor vehicle matters pending in the Superior Court.[1] On September 24, 2008, while the petitioner was representing himself, the state extended a plea bargain to him that would have resolved all pending charges in exchange for guilty pleas and a total effective sentence of forty years incarceration, execution suspended after fifteen years, to be followed by a five year period of probation. The petitioner, who was free on bond, was given time to consider the offer.

"Two days later, on September 26, 2008, the police executed a search and seizure warrant stemming from suspected drug trafficking activities at the petitioner's condominium. During the execution of the search warrant, the petitioner was arrested after police found a large quantity of heroin in a bedroom.[2] As a result of the additional charges, the state modified its original plea offer to reflect the new drug charges. Considering only the drug cases, the petitioner at trial would have faced forty-six years of mandatory minimum incarceration with a maximum sentence of life. The state's modified plea offer proposed that the petitioner actually serve twenty years as opposed to the original offer of fifteen.

"On October 1, 2008, the petitioner retained the services of Attorney Eugene Zingaro. Although the petitioner initially appeared willing to accept the state's modified plea offer, Zingaro ultimately was successful in restoring the original plea offer." (Footnotes in original.) *Bigelow* v. *Commissioner of Correction*, 146 Conn. App. 737, 739, 80 A.3d 84 (2013). During the sentencing hearing, the court thoroughly canvassed the petitioner, determined that his pleas were knowing, intelligent and voluntary, and accepted them.[3] "On November 12, 2008, the petitioner accepted the original offer, pleaded guilty, and was sentenced to forty years incarceration, execution suspended after fifteen years, followed by five

years of probation." Id., 739–40.

Following his convictions, the petitioner brought two petitions for writs of habeas corpus.[4] The petitioner's second such petition was filed on July 5, 2012, and amended for the final time on September 14, 2014. In essence, the petitioner argued that his first habeas counsel, Melissa Toddy, rendered ineffective assistance by failing to raise a claim regarding the deficient performance of his trial counsel, Zingaro. Specifically, the petitioner alleged that Toddy should have pursued such a claim because Zingaro rendered ineffective assistance in failing (1) to properly advise him regarding his guilty plea, (2) to file an application to participate in a drug treatment program on his behalf, (3) to seek jail credit for three days that he spent in local lockup, and (4) to properly investigate the death of an informant on whom the state relied.

In the second habeas trial, which is the subject of this appeal, the court heard testimony from the petitioner, Zingaro, and Toddy. Following the trial, the court issued a memorandum of decision denying the petitioner's claims of ineffective assistance of counsel. The habeas court subsequently denied the petition for certification to appeal. This appeal followed. Additional facts will be set forth as necessary.

As an initial matter, we set forth the standard of review and the legal principles that guide our resolution of the petitioner's appeal. "In *Simms* v. *Warden*, 229 Conn. 178, 187, 640 A.2d 601 (1994), we concluded that [General Statutes] § 52-470 (b) prevents a reviewing court from hearing the merits of a habeas appeal following the denial of certification to appeal unless the petitioner establishes that the denial of certification constituted an abuse of discretion by the habeas court. In *Simms* v. *Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994), we incorporated the factors adopted by the United States Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as the appropriate standard for determining whether the habeas court abused its discretion in denying certification to appeal. This standard requires the petitioner to demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . A petitioner who establishes an abuse of discretion through one of the factors listed above must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Emphasis in original; internal quotation marks

omitted.) *Tutson* v. *Commissioner of Correction*, 144 Conn. App. 203, 214–15, 72 A.3d 1162, cert. denied, 310 Conn. 928, 78 A.3d 145 (2013).

"We examine the petitioner's underlying claim of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Hankerson* v. *Commissioner of Correction*, 150 Conn. App. 362, 367, 90 A.3d 368, cert. denied, 314 Conn. 919, 100 A.3d 852 (2014).

With respect to the petitioner's substantive claims, "[i]t is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings . . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the second prong of *Strickland*, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. . . . The second prong is thus satisfied if the petitioner can demonstrate that there is a reasonable probability that, but for that ineffectiveness, the outcome would have been different. . . . An ineffective assistance of counsel claim will succeed only if both prongs [of *Strickland*] are satisfied. . . . The court, however, may decide against a petitioner on either prong, whichever is easier." (Citations omitted; internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 823, 153 A.3d 8 (2016), cert. denied, 325 Conn. 904, 156 A.3d 536 (2017).

The petitioner claims that the habeas court abused its discretion in denying his petition for certification

to appeal because it improperly rejected his claims of ineffective assistance of counsel. Specifically, the petitioner claims that the court abused its discretion in denying the petition for certification to appeal because, in the first habeas proceeding, Toddy failed to raise claims that Zingaro rendered ineffective assistance in that he failed (1) to adequately advise and represent him during plea negotiations and in connection with his eventual guilty plea, (2) to file a motion for examination under a substance abuse diversionary program,[5] and (3) to request presentence confinement credit of three days.

We turn to the merits of the petitioner's claims, recognizing that the claimed deficient performance regarding his first habeas counsel must fail if the claims of ineffective assistance of his trial counsel are without merit. See *Lozada* v. *Warden*, 223 Conn. 834, 842–43, 613 A.2d 818 (1992).

I

The petitioner first claims that Zingaro inadequately advised him throughout the plea negotiation and ineffectively represented him when he pleaded guilty. Specifically, he argues that Zingaro rendered ineffective assistance because he failed (1) to ensure that there was a proper factual and evidentiary basis for each of the charged offenses, (2) to adequately inform the petitioner of the minimum and maximum sentence for each charge,[6] and (3) to adequately investigate the death of Nicklaus Larson.[7] The habeas court concluded that Zingaro provided appropriate advice relating to the petitioner's guilty plea on the basis of the petitioner's failure to satisfy his burden of proof under *Strickland*. We agree with the habeas court.

"For ineffectiveness claims resulting from guilty pleas, we apply the standard set forth in *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), which modified *Strickland*'s prejudice prong." *Baillargeon* v. *Commissioner of Correction*, 67 Conn. App. 716, 721, 789 A.2d 1046 (2002). "To satisfy the performance prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . A petitioner who accepts counsel's advice to plead guilty has the burden of demonstrating on habeas appeal that the advice was not within the range of competence demanded of attorneys in criminal cases. . . . To satisfy the prejudice prong, the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. . . . Reasonable probability does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome in the case, but he must establish a probability sufficient to undermine confidence in the outcome. . . . The *Hill* court noted that [i]n many guilty plea cases, the prejudice inquiry will closely resemble

the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate . . . the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." (Citations omitted; internal quotation marks omitted.) *McClellan* v. *Commissioner of Correction*, 103 Conn. App. 159, 162, 927 A.2d 992 (2007).

At the plea hearing, the petitioner responded in the affirmative to Judge Reynolds' canvass, which asked him, inter alia, whether he was entering the plea voluntarily, whether he had had discussions regarding the plea with Zingaro pertaining to the elements of the charged offenses, the evidence the state had, and whether Zingaro discussed the possible penalties, including maximum periods of incarceration the charges carried.[8] At the conclusion of the canvass, the court found that the petitioner's plea was made "freely, voluntarily, intelligently . . . with the effective assistance of counsel, and [that] a factual basis does exist to support [the plea]." The court then accepted the guilty plea as to each charge, and the petitioner did not object.

"A court may properly rely on . . . the responses of the [petitioner] at the time [he] responded to the trial court's plea canvass . . . ." (Internal quotation marks omitted.) *Carey* v. *Commissioner of Correction*, 86 Conn. App. 180, 185, 860 A.2d 776 (2004), cert. denied, 272 Conn. 915, 866 A.2d 1283 (2005).[9] "It is appropriate to presume that in most cases counsel routinely explains the consequences of a plea agreement." *Toles* v. *Commissioner of Correction*, 113 Conn. App. 717, 727, 967 A.2d 576, cert. denied, 293 Conn. 906, 978 A.2d 1114 (2009).

In support of his argument that his guilty plea was not knowingly made, the petitioner primarily points to his testimony that he gave at the second habeas trial regarding Zingaro's failure (1) to explain to him the minimum and maximum sentence for each offense, and (2) to ensure that there was adequate evidentiary support for the charged offenses. That testimony clearly conflicts with the statements that the petitioner made during the plea canvass. More importantly, however, the habeas court discredited the petitioner's testimony and concluded that "Zingaro provided appropriate advice." These findings are supported by the record.

Zingaro testified at the second habeas proceeding that his usual practice in 2008, the time he represented the petitioner, with respect to preparing his clients prior

to a plea canvass, was that he would discuss with his client the "charges he was pleading to, the sentences, the total combined, the total effective sentence, which charges were mandatory, [and] which carried mandatory time." Zingaro further testified that he did not believe that the state's recitation of the facts during the petitioner's plea hearing were inaccurate. He also testified that if there was an error in the state's recitation of the facts or if the evidence did not support the charges brought against the petitioner, he would have raised those issues to the court. Moreover, Zingaro testified that the petitioner would have accepted the state's second offer of forty years imprisonment, suspended after twenty years, and had no second thoughts about accepting the third offer of forty years imprisonment, suspended after fifteen years.

On the basis of the court's canvass and its finding of guilty at the plea hearing, without objection from the petitioner, in addition to Zingaro's testimony at the habeas proceeding, we conclude that the habeas court's factual findings were not clearly erroneous.

Next, we briefly discuss the petitioner's argument that Zingaro failed to adequately investigate Larson's death. At the habeas trial, Zingaro testified that the state was not exclusively relying on Larson's testimony to prove its case because it had other evidence, including a written statement from Larson, and the testimony of several police officers who witnessed drug transactions between the petitioner and Larson. In Zingaro's opinion, the death of Larson did not significantly impact the state's case against the petitioner as a result.

In its memorandum of decision, the habeas court stated: "The evidence alleged to have been withheld by the prosecuting authority is the death of a Mr. Nicklaus Larson, the person to whom the petitioner sold drugs on his last arrest. Unfortunately for the petitioner's argument, the state clearly disclosed that fact in the recitation of facts preceding the plea canvass *before* his plea was accepted." (Emphasis in original.) The court further stated: "[T]he testimony by Mr. Larson was not critical to the state proving that charge, as there were several hand-to-hand transactions observed by the undercover police officers. It is clear that the trial defense counsel made due diligence in investigating and understanding the facts surrounding the state's obviously strong case against the petitioner. This cannot form the basis for any complaint of ineffective assistance of trial defense counsel."

We agree with the habeas court's conclusion relating to this claim and need only address the petitioner's failure to satisfy the prejudice prong under *Strickland.* See *Sanders* v. *Commissioner of Correction*, supra, 169 Conn. App. 821–23. Other than the petitioner's own testimony, nothing in the record suggests that the petitioner would have opted for trial. At the time of the

petitioner's guilty plea, the petitioner had several pending criminal cases that exposed him to significant jail time. The petitioner's guilty plea ultimately consolidated and disposed of his numerous pending cases into a sentence of forty years of imprisonment, execution suspended after fifteen years. The habeas court stated that "[a]ccepting this pretrial offer was prudent," given the substantial jail time he would have otherwise faced. Moreover, although Larson's death certainly did not strengthen the state's case, there was significant evidence supporting the petitioner's convictions, including the testimony of several undercover officers who witnessed the petitioner engage in hand-to-hand drug transactions. Simply put, even if we were to assume that the petitioner and his counsel were unaware of Larson's death, the petitioner's claim that he would have pursued a jury trial is speculative at best. Accordingly, this argument is without merit.

## II

The petitioner next argues that Zingaro rendered ineffective assistance by failing to file a motion for examination for alcohol or drug dependency pursuant to the Connecticut Alcohol and Drug Abuse Commission's diversionary program (CADAC).[10] Specifically, he contends that Zingaro rendered ineffective assistance because he should have investigated the petitioner's personal history pertaining to substance abuse and should have determined whether the petitioner would have benefited from the program. We disagree.

In its memorandum of decision, the court noted that "in order to even be eligible for . . . CADAC one must be addicted to substances at the time of the offense. This record before this court is devoid of any evidence, with the exception of the petitioner's own self-serving testimony, that the petitioner was even using drugs, much less being addicted to them. In addition, the testimony at this habeas trial from [Zingaro] and the testimony at the petitioner's first habeas trial clearly show that the instant proceeding is the first time that there has been any issue surrounding the petitioner's potential substance abuse addiction. This court, therefore, concludes that any allegation of drug addiction was never brought to the attention of the trial defense counsel, so there would not even have been any reason to consider a CADAC application. Furthermore, merely making an application for CADAC does not guarantee that such an application would have been accepted by the trial court. Given the large number of criminal files that the petitioner had amassed, his reputation as the major drug dealer in Danbury, the large bond placed upon him, and comments by the trial court, it would appear to be most likely, indeed almost a certainty, that a CADAC application would have been rejected by the trial court, even had the examination shown he was addicted to substances at the time he committed his

offenses (an unlikely finding based upon the totality of the evidence). The interests of justice would not have been served by treatment. To summarize, it is clear that [Zingaro] did not have a good faith basis to make a request for a [diversionary program] examination and, further, had one been made it is unlikely that it would have been granted even if made." (Footnote omitted.)

With respect to Zingaro's testimony, the court noted that he "went to great lengths to describe his observations of the physical condition of the petitioner . . . and his opinion that there was no way this man was a drug abuser. Second, the testimony by [Zingaro] is that no information was ever presented to him to support a suspicion that a [diversionary program] examination would reveal a substance abuse issue." The court expressly credited Zingaro's testimony and found that "the statements by the petitioner are rejected as being unworthy of belief."

"As an appellate court, we do not reevaluate the credibility of testimony, nor will we do so in this case. The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . Furthermore, we are entitled to presume that the trial court acted properly and *considered all the evidence*." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Palmenta* v. *Commissioner of Correction*, 152 Conn. App. 702, 707–708, 99 A.3d 1254, cert. denied, 314 Conn. 941, 103 A.3d 164 (2014).

The court expressly credited Zingaro's testimony that his personal observations did not lead him to conclude that the petitioner was abusing drugs at the time Zingaro represented him. Further, the only evidence suggesting otherwise was the petitioner's testimony, which the court declined to credit. Because the habeas court is the sole arbiter of credibility determinations, and nothing in the record suggests that the court did not consider all of the evidence, we thus conclude that the court's findings were not clearly erroneous. Accordingly, the habeas court did not abuse its discretion in denying the petition for certification to appeal with respect to this claim.

### III

Finally, the petitioner argues that he received ineffective assistance of counsel because Zingaro failed to seek jail credit for three days that he spent in local lockup. This argument fails for the following reasons.

In its memorandum of decision, the habeas court rejected the petitioner's claim regarding jail credit and stated: "It is true that the petitioner was arrested on [September 26, 2008] and held in the local lockup until his arraignment in court on [September 29, 2008]. It is also true that in order for the petitioner to receive any credit for those three days, his counsel should have

requested it at the time of sentencing so the local lockup credit could have been noted on the mittimus. It is clear that [Zingaro] did not make such a request and that normally this court would have found that to be deficient performance. But since this local lockup credit applied *only* to Docket No. CR-08-0133512 and the sentence on that docket was five years concurrent to the other sentences, this three day credit would not have resulted in any reduction of the time that the petitioner was required to serve. Consequently, there is no prejudice accruing to the petitioner." (Internal quotation marks omitted.)

The following legal principles guide our analysis. "If more than one sentence is imposed on a prisoner, the respondent calculates the incarceration period and discharge date by applying the provisions of General Statutes § 53a-38 (b), which provides in relevant part: Where a person is under more than one definite sentence, the sentences shall be calculated as follows: (1) If the sentences run concurrently, the terms merge in and are satisfied by discharge of the term which has the longest term to run . . . . The merger concept embodied in this provision simply requires that the respondent compare the length of each sentence, after adjustment for its authorized credits, in order to ascertain which is the longest for the purpose of determining the prisoner's discharge date. . . . The merger process does not alter the fact that concurrent sentences remain separate terms of imprisonment which the legislature has permitted to be served at one time." (Citation omitted; internal quotation marks omitted.) *Harris* v. *Commissioner of Correction*, 271 Conn. 808, 819, 860 A.2d 715 (2004).

Even if the petitioner received the claimed presentence confinement credit, that credit applied only to his sentence relating to Docket No. CR-08-0133512. As noted in the preceding paragraph, when sentences run concurrently, "the terms merge in and are satisfied by discharge of the term which has *the longest term to run* . . . ." (Emphasis added.) General Statutes § 53a-38 (b). That merger process clearly precludes the petitioner from showing any prejudice resulting from any alleged deficient performance because his discharge date ultimately remains unchanged. See *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 823. In short, the lockup credit, if applied, would not affect the petitioner's discharge date because the longest term to run was not his sentence relating to Docket No. CR-08-0133512. Thus, the court did not abuse its discretion as it relates to this claim.

In sum, the petitioner has failed to establish that the issues he raised are debatable among jurists of reason, that a court could resolve them in a different manner or that the questions he raised are adequate to deserve encouragement to proceed further. See *Patterson* v. *Commissioner of Correction*, 150 Conn. App. 30, 34,

89 A.3d 1018 (2014). In light of our foregoing conclusion that the petitioner's claims against his trial counsel are without merit, the claims pertaining to his first habeas counsel necessarily fail. Accordingly, we conclude that the court did not abuse its discretion in denying the petition for certification to appeal from the judgment denying his amended petition for a writ of habeas corpus.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] "The petitioner was charged with multiple counts of possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (b), assault of a police officer in violation of General Statutes § 53a-167c, and disorderly conduct in violation of General Statutes § 53a-183." *Bigelow* v. *Commissioner of Correction*, 146 Conn. App. 737, 739 n.1, 80 A.3d 84 (2013).

[2] "The petitioner was charged with possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (b)." *Bigelow* v. *Commissioner of Correction*, 146 Conn. App. 737, 739 n.2, 80 A.3d 84 (2013).

[3] The transcript of the plea canvass provides in relevant part:

"The Court: Do you understand everything that's going on here today?

"[The Petitioner]: Yes, ma'am.

"The Court: Have you had enough time to speak with your attorney?

"[The Petitioner]: Yes, ma'am.

"The Court: Did your attorney explain to you the elements of all these offenses, the evidence the state has, and the possible penalties to you, including maximum periods of incarceration?

"[The Petitioner]: Yes, ma'am.

"The Court: All right. Now, Attorney Zingaro, did you have time to do that?

"Attorney Zingaro: Yes I did, Your Honor.

"The Court: All right. Are you satisfied with the services of your attorney?

"[The Petitioner]: Yes, ma'am. . . .

"The Court: Okay. Do you understand, sir, by pleading guilty in all of these files, you have waived certain rights?

"[The Petitioner]: Yes, ma'am."

[4] In the petitioner's first petition for a writ of habeas corpus, he alleged that his trial counsel was burdened by a conflict of interest as a result of having represented him and his brother at the same time. *Bigelow* v. *Commissioner of Correction*, supra, 146 Conn. App. 740–41. The habeas court denied the petition for a writ of habeas corpus, but granted the petition for certification to appeal. Id., 740. The petitioner appealed from that denial, and this court affirmed the judgment of the habeas court. Id., 744.

[5] See General Statutes § 17a-693 et seq.

[6] The respondent, the Commissioner of Correction, argues that this court is precluded from reviewing the petitioner's claim that Zingaro rendered ineffective assistance when he failed to inform the petitioner of the maximum and minimum penalties because this claim was not raised before and decided by the habeas court. Having reviewed the entire record, we conclude that the petitioner's argument is inextricably intertwined with the legal arguments and claims litigated before and decided by the habeas court. Accordingly, we conclude that this claim is reviewable on appeal. See *Michael T.* v. *Commissioner of Correction*, 319 Conn. 623, 635 n.7, 126 A.3d 558 (2015).

[7] Larson was a confidential informant to whom the petitioner sold drugs on his last arrest before he pleaded guilty in the underlying case.

[8] See footnote 3 of this opinion.

[9] "In a related area, our Supreme Court has stated that the court need not advise a defendant of every possible consequence of a plea. Although a defendant must be aware of the direct consequences of a plea, the scope of direct consequences is very narrow. . . . In Connecticut, the direct consequences of a defendant's plea include only the mandatory minimum and maximum possible sentences . . . the maximum possible consecutive sentence . . . the possibility of additional punishment imposed because of previous conviction(s) . . . and the fact that the particular offense does not permit a sentence to be suspended. . . . The failure to inform a defendant as to all possible indirect and collateral consequences does not render a plea unintelligent or involuntary in a constitutional sense." (Internal quotation marks omitted.) *Toles* v. *Commissioner of Correction*, 113 Conn. App. 717, 727 n.5, 967 A.2d 576, cert. denied, 293 Conn. 906, 978 A.2d 1114 (2009).