******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# LUIS LEBRON *v.* COMMISSIONER
## OF CORRECTION
### (AC 43579)

Bright, C. J., and Alvord and Prescott, Js.

*Syllabus*

The petitioner, who previously had been convicted, on a guilty plea, of the crimes of manslaughter in the first degree with a firearm and conspiracy to commit witness tampering, filed his third petition for a writ of habeas corpus, claiming, inter alia, that he had received ineffective assistance from D, his first habeas counsel. At the petitioner's criminal trial, the trial court permitted his defense counsel, S, to withdraw on the ground that he could be called as a witness at trial. The petitioner indicated to the court that he waived any conflict, and wanted to proceed to trial and was prepared to represent himself, which the court did not allow. The petitioner thereafter was charged with additional crimes in a separate docket, and C was appointed to represent him on all of the charges, after which the petitioner entered his plea. In the first habeas action, the petitioner alleged that S and C had rendered ineffective assistance. The habeas court denied the petition, and D failed to file a timely petition for certification to appeal. In the second habeas action, in which the petitioner alleged that S, C and D had provided ineffective assistance, the habeas court rendered judgment restoring the petitioner's appellate rights with respect to the issues raised in the first habeas petition. The petitioner thereafter appealed from the denial of his first habeas petition, but did not raise the merits of his claims in that first petition against S and C. This court affirmed the judgment of the first habeas court. The petitioner then filed his third habeas petition, and the habeas court rendered a judgment of dismissal, concluding that there was no good cause to proceed to trial. This court reversed in part the judgment of the habeas court and remanded the case for a trial on the merits of the petitioner's claim that his right to the effective assistance of habeas counsel had been violated. The petitioner claimed that D failed to pursue a claim that his right to the effective assistance of criminal trial counsel had been violated when C failed to advise him properly that his plea would operate as a waiver of his appellate rights, specifically, his right to challenge the trial court's granting of S's motion to withdraw. After a trial on the merits, the habeas court rendered judgment denying the petitioner's claim on the ground that he had failed to prove prejudice because he failed to establish that he would not have pleaded guilty but for counsel's alleged deficient performance. Thereafter, the habeas court granted the petition for certification to appeal, and the petitioner appealed to this court. *Held* that the habeas court properly denied the petitioner's ineffective assistance of habeas counsel claim because he failed to establish that he was prejudiced by the alleged deficient performance of C; the petitioner faced a possible sentence of 140 years of incarceration with no possibility of parole if convicted at trial, and C was able to negotiate a reduction in the charges and a state recommended sentence of thirty years of incarceration with the possibility of parole in exchange for the petitioner's plea, and the record supported the court's finding that the petitioner would not have declined that plea offer on the chance that he could convince a jury on a retrial, after he was convicted once and successfully appealed on the grounds he claimed he would have pursued if he had been counseled properly by C, that he was not guilty, as the state's case against the petitioner was strong, the petitioner's claim of self-defense had significant weaknesses, and the court was free to discredit the petitioner's testimony that he would have gone to trial had he been counseled by C that his issues regarding S's withdrawal and his right to self-representation could have been raised on appeal had he been convicted.

Argued February 4—officially released April 20, 2021

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland where the court *Sferrazza, J.*, rendered judgment dismissing the petition, from which the petitioner, on the granting of certification, appealed to this court, *Keller*, *Prescott* and *Kahn*, *Js.*, which reversed in part the judgment of the habeas court and remanded the case for a trial on the merits; subsequently, the matter was tried to the court before *Bhatt, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Vishal K. Garg*, for the appellant (petitioner).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Leah Hawley*, former senior assistant state's attorney, for the appellee (respondent).

*Opinion*

BRIGHT, C. J. The petitioner, Luis Lebron, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. The habeas court granted his petition for certification to appeal. On appeal, the petitioner claims that the habeas court improperly rejected his claim that his right to the effective assistance of counsel was violated when his first habeas counsel, Attorney Sebastian DeSantis, failed to pursue a claim that the petitioner's criminal trial counsel, Attorney Thomas Conroy, had provided ineffective assistance when he failed to advise the petitioner that he would be waiving his appellate rights by pleading guilty. We affirm the judgment of the habeas court.

The following facts and somewhat complicated procedural history inform our review. The state, in 1997, originally charged the petitioner with murder in violation of General Statutes § 53a-54a (a) and criminal use of a firearm in violation of General Statutes § 53a-216 after he shot and killed another man. The petitioner claimed that he shot the victim in self-defense. Attorney Kenneth Simon represented the petitioner in connection with these charges. During jury selection, in January, 1999, it became apparent to Simon that the petitioner would be charged with conspiracy to commit additional crimes relating to two witnesses to the shooting, namely, two counts of conspiracy to commit witness tampering and two counts of conspiracy to commit murder. Simon then filed a motion to withdraw from representing the petitioner, stating that he believed that he likely would be called as a witness during the trial on the anticipated new charges. The petitioner opposed Simon's motion and argued, in the alternative, that he should be able to represent himself temporarily, until a special public defender could be appointed. On January 27, 1999, the court denied the petitioner's request to represent himself temporarily, granted Simon's motion to withdraw, and declared a mistrial. In a separate information, the state additionally charged the petitioner with two counts of conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a, and two counts of conspiracy to commit witness tampering in violation of General Statutes §§ 53a-48 and 53a-151. Attorney Conroy later was appointed to represent the petitioner on all of the charges

Conroy negotiated a plea agreement with the state that resolved all charges against the petitioner, pursuant to which the petitioner pleaded guilty under the *Alford* doctrine[1] to one count of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a and one count of conspiracy to commit witness tampering. The court sentenced the petitioner to a term of thirty years of incarceration on the manslaughter charge and to an unconditional discharge on the conspiracy charge. The state entered a nolle prosequi

as to all of the other charges.

In June, 2000, the petitioner filed his first petition for a writ of habeas corpus. The petitioner's first habeas counsel, Attorney DeSantis, filed an amended petition, in which the petitioner alleged ineffective assistance of counsel as to Simon and Conroy. Specifically, the amended petition contained allegations that counsel had rendered ineffective assistance by failing to pursue discovery and to communicate with the petitioner about discovery, by failing to challenge the petitioner's arrest and the circumstances surrounding his arrest, by failing to challenge the arrest warrant, and by failing to communicate with the petitioner regarding legal and evidentiary standards so that he could make an informed decision on whether to plead guilty or to proceed to trial. On February 20, 2003, the habeas court denied the amended habeas petition (first habeas court's decision). DeSantis did not file a timely petition for certification to appeal from the first habeas court's decision. The petitioner, however, filed a pro se petition for certification to appeal on February 26, 2003, which was denied. No appeal from that denial was timely taken.

On July 18, 2006, the petitioner, represented by Attorney Paul Kraus, filed a second petition for a writ of habeas corpus, alleging the ineffective assistance of counsel as to Simon, Conroy, and DeSantis. The habeas court and the petitioner entered a stipulated agreement to restore the petitioner's appellate rights in the first habeas case (second habeas case). The court also granted a petition for certification to appeal from the first habeas court's decision. On September 8, 2006, the petitioner filed an appeal from the first habeas court's decision limited only to whether the first habeas court improperly had denied his postjudgment motions for reconsideration and reargument. This court denied review of those claims because they fell outside the scope of the stipulated agreement in the second habeas case, and our Supreme Court denied the petition for certification to appeal from our decision. See *Lebron* v. *Commissioner of Correction*, 108 Conn. App. 245, 249, 947 A.2d 349, cert. denied, 289 Conn. 921, 958 A.2d 151 (2008).

Nearly ten years later, on January 8, 2016, the petitioner filed a six count amended petition for a writ of habeas corpus, his third such petition. On May 5, 2016, the habeas court rendered a judgment of dismissal on the amended petition, concluding that there was no good cause to proceed to trial. The habeas court granted the petition for certification to appeal on May 18, 2016. On appeal, this court reversed in part the judgment of the habeas court and remanded the case for, inter alia, a trial on the merits of the petitioner's claim that his right to the effective assistance of habeas counsel had been violated because DeSantis had failed to pursue a claim that the petitioner's right to the effective assis-

tance of criminal trial counsel had been violated when Conroy failed to advise the petitioner properly that his *Alford* plea would operate as a waiver of his appellate rights, specifically, his right to challenge the criminal trial court's granting of Simon's motion to withdraw. See *Lebron* v. *Commissioner of Correction*, 178 Conn. App. 299, 319–24, 175 A.3d 46 (2017), cert. denied, 328 Conn. 913, 179 A.3d 779 (2018).

The habeas court proceeded to a hearing on the merits of the petitioner's remaining claim. On August 28, 2019, the habeas court issued a memorandum of decision denying the petition on the ground that the petitioner had failed to prove prejudice because he failed to establish that he would not have pleaded guilty but for counsel's alleged deficient performance. The court, thereafter, granted the petitioner's petition for certification to appeal. This appeal followed.

On appeal, the petitioner claims that the habeas court improperly rejected his claim that his right to the effective assistance of counsel was violated when his first habeas counsel, DeSantis, failed to pursue a claim that the petitioner's criminal trial counsel, Conroy, had failed to advise him that, by pleading guilty, he would be waiving his rights to challenge on appeal the decision of the criminal trial court allowing Simon to withdraw and denying the petitioner's alternative request to represent himself. He alleges that the actions of the criminal trial court violated his constitutional rights to his counsel of choice and to self-representation. The respondent, the Commissioner of Correction, maintains that the petitioner failed to meet the prejudice prong of his ineffective assistance of counsel claim, and, therefore, the habeas court properly rejected the claim. We agree with the respondent.

We now turn to the merits of the petitioner's claim, recognizing that the claimed ineffective assistance regarding his first habeas counsel, DeSantis, must fail if the claims of ineffective assistance of his replacement trial counsel, Conroy, are without merit. See *Lozada* v. *Warden*, 223 Conn. 834, 842–43, 613 A.2d 818 (1992).

In *Lozada*, our Supreme Court "established that habeas corpus is an appropriate remedy for the ineffective assistance of appointed habeas counsel, authorizing what is commonly known as a habeas on a habeas, namely, a second petition for a writ of habeas corpus . . . challenging the performance of counsel in litigating an initial petition for a writ of habeas corpus . . . [that] had claimed ineffective assistance of counsel at the petitioner's underlying criminal trial or on direct appeal. . . . Nevertheless, the court in *Lozada* also emphasized that a petitioner asserting a habeas on a habeas faces the herculean task . . . of proving in accordance with *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), both (1) that his appointed habeas counsel was ineffective,

and (2) that his trial counsel was ineffective. . . . Any new habeas trial would go to the heart of the underlying conviction to no lesser extent than if it were a challenge predicated on ineffective assistance of trial or appellate counsel. The second habeas petition is inextricably interwoven with the merits of the original judgment by challenging the very fabric of the conviction that led to the confinement." (Citations omitted; internal quotation marks omitted.) *Lebron* v. *Commissioner of Correction*, supra, 178 Conn. App. 319–20.

"A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. . . . For ineffectiveness claims resulting from guilty pleas, we apply the standard set forth in *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) . . . . To satisfy the performance prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . To satisfy the prejudice prong, the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Bigelow* v. *Commissioner of Correction*, 175 Conn. App. 206, 212–14, 167 A.3d 1054, cert. denied, 327 Conn. 929, 171 A.3d 455 (2017).

"The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . [T]his court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citation omitted; internal quotation marks omitted.) *Godfrey* v. *Commissioner of Correction*, 202 Conn. App. 684, 693,    A.3d    (2021).

In evaluating the prejudice prong and the credibility of the petitioner's assertion that he would have insisted on going to trial but for Conroy's deficient performance, it is appropriate for the habeas court to consider whether a decision to reject a plea offer, under the circumstances presented, would have been rational. See *Padilla* v. *Kentucky*, 559 U.S. 356, 372, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Additionally, a petitioner's assertion after he has accepted a plea that he would have insisted on going to trial suffers from obvious credibility problems . . . . In evaluating the credibility of such an assertion, the strength of the state's case is often the best evidence of whether a defendant in fact would have changed his plea and insisted on going to trial . . . . Likewise, the credibility of the petitioner's after the fact insistence that he would have gone to trial should be assessed in light of the likely risks that pursuing that course would have entailed." (Internal

quotation marks omitted.) *Colon* v. *Commissioner of Correction*, 179 Conn. App. 30, 36–37, 177 A.3d 1162 (2017), cert. denied, 328 Conn. 907, 178 A.3d 390 (2018).

In the present case, the petitioner argues that his underlying claims regarding the alleged violations of his rights to self-representation and to counsel of choice had considerable merit. The petitioner asserts that if Conroy had informed him of the merits of his constitutional claims and explained that, by pleading guilty, he would be giving up his right to assert those claims on appeal, he would not have entered an *Alford* plea but, instead, would have proceeded to trial. In its memorandum of decision, the habeas court concluded that the petitioner failed to demonstrate prejudice because he did not establish that, even if it assumed that the petitioner had been counseled by Conroy that his claims had merit and that, *following a conviction*, the petitioner could raise those claims in an appeal and, if successful on appeal, would be entitled to a retrial on the charges, the petitioner would not have accepted the plea offer but, instead, would have elected to proceed to trial.

In particular, the court credited the testimony of Simon and Conroy that the petitioner's self-defense claim had significant weaknesses and that there was a strong likelihood that the petitioner would be convicted of murder, or at least manslaughter in the first degree, on the original charges. In addition, the petitioner faced another eighty years of exposure arising out of the additional charges of conspiracy to commit murder and conspiracy to tamper with witnesses. The court also noted that the petitioner's potential constitutional claims for appeal relating to Simon's withdrawal and to the petitioner's right of self-representation, at best, would have resulted only in another trial on the same charges with the same evidence available to the prosecution. On the basis of these underlying facts, the court clearly did not credit the petitioner's testimony that he would not have pleaded guilty had he been advised properly by Conroy. Specifically, the court stated that it "fail[ed] to see how the petitioner would want to risk exposing himself to a significantly longer sentence at a trial when the basis for a new trial would do nothing to make it more likely that he would be acquitted at the first or second trial. Put another way, pursuing the two claims he wished to [pursue] would only result in a second trial at which the state's evidence would be the same as that at the first. In light of that, it is not reasonable to conclude that the petitioner would have rejected the favorable offer and proceeded to trial." We conclude that the court's finding that the petitioner failed to establish that but for Conroy's alleged deficient performance, he would not have pleaded guilty but would have gone to trial was not clearly erroneous.

The petitioner faced a total possible sentence of 140

years of incarceration, with no possibility of parole if convicted at trial. Conroy was able to negotiate a reduction in the charges and a state recommended sentence of thirty years, with a right for the petitioner to argue for a lesser sentence, in exchange for the petitioner entering an *Alford* plea. At sentencing, Conroy argued for an unconditional discharge on the conspiracy charge, which the court granted and thereafter sentenced the petitioner to thirty years to serve on the manslaughter charge; the state nolled the remaining charges.

In addition, Conroy testified that he believed the state had a strong case against the petitioner and that he had urged the petitioner to take the plea bargain to avoid the risk of a murder conviction. In its memorandum of decision, the habeas court also discussed Conroy's testimony during the petitioner's first habeas trial that one of the benefits of the petitioner's plea of guilty to the manslaughter charge was that he would be eligible for parole, but if he had been convicted of the murder charge, he would have been ineligible for parole.

The record further demonstrates that the state's case against the petitioner was strong. In the petitioner's own statement to the police, he admitted that he drew his firearm first and pointed it at the victim. A witness identified the petitioner as the shooter, and the charges against the petitioner for conspiracy to commit murder were related to the petitioner's attempt to prevent that witness and another person from testifying at his criminal trial.

During the habeas trial, although the petitioner testified that he believed he had a strong case, and he wanted to continue to trial after Simon withdrew because he "felt that . . . the case would go in [his] favor," he also testified that Conroy told him that the state's case against him was "voluminous." Further, although the petitioner testified that he would have gone to trial if he had known that his issues regarding Simon's withdrawal and his right to self-representation could be raised on appeal if he were convicted, the court was free to discredit this testimony.

The record clearly supports the court's finding that the petitioner would not have declined a plea offer of thirty years of incarceration, with the possibility of parole, on a roll of the dice that he could convince a jury on a retrial, after he was convicted once and successfully appealed from that conviction, that he was not guilty. A reversal of the judgment of conviction by this court on the grounds that the petitioner claims he would have raised on appeal, if successful, would not have resulted in an acquittal, but would have resulted in a retrial with the same evidence and with the petitioner again facing a possible sentence of 140 years in prison with no possibility of parole on the murder and conspiracy to commit murder charges. We conclude that the

habeas court's finding that the petitioner failed to establish that there was a reasonable probability that he would not have pleaded guilty but for Conroy's alleged deficient performance was not clearly erroneous. Accordingly, we conclude, as a matter of law, that the habeas court properly determined that the petitioner failed to satisfy the prejudice prong of *Strickland*.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "Under *North Carolina* v. *Alford*, [400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)], a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Walker*, 187 Conn. App. 776, 778 n.2, 204 A.3d 38, cert. denied, 331 Conn. 914, 204 A.3d 703 (2019).