******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

# DEREK HUMBLE *v.* COMMISSIONER OF CORRECTION
## (AC 39441)

Alvord, Bright and Sullivan, Js.

*Syllabus*

The petitioner, who had been convicted on guilty pleas pursuant to the *Alford* doctrine of the crimes of carrying a pistol without a permit, escape in the first degree and murder in connection with the shooting death of the victim, sought a writ of habeas corpus, claiming that his trial counsel had provided ineffective assistance. The habeas court rendered judgment denying the habeas petition and, thereafter, denied the petition for certification to appeal, and the petitioner appealed to this court. *Held*:

1. The petitioner could not prevail on his claim that the habeas court abused its discretion in denying the petition for certification to appeal with respect to his claim that his trial counsel provided ineffective assistance by failing to adequately investigate certain evidence that allegedly would have supported a claim of self-defense; the petitioner failed to satisfy his burden of demonstrating that he was prejudiced by his counsel's allegedly deficient performance by showing that there was a reasonable probability that had counsel interviewed two witnesses who had evidence that tended to support the petitioner's claim of self-defense, the petitioner would have rejected the state's plea offer and insisted on going to trial, as the record suggested that the petitioner was aware that another witness already had corroborated the petitioner's claim that the victim had a gun during the incident but he nonetheless elected to accept the state's offer and to plead guilty, the police did not recover a gun from the body of the victim, there was no evidence that a second gun was discharged at the scene, it was probable that a jury would interpret evidence of an ongoing feud between the petitioner and the victim as motive for the shooting and not as evidence of self-defense, especially since the petitioner had voluntarily confessed to the killing and to having previously robbed the victim, and the plea deal resolved certain charges against the petitioner in another pending criminal case that exposed him to significant jail time and for which he had no defense.

2. The habeas court did not abuse its discretion in denying the petition for certification to appeal with respect to the petitioner's claim that his trial counsel rendered ineffective assistance by advising him to plead guilty to murder without conducting an adequate investigation and by failing to provide objectively reasonable advice with respect to his plea of guilty to murder; the petitioner failed to demonstrate that but for his trial counsel's advice, he would have rejected the plea offer of thirty years incarceration as a settlement of all the charges that he was facing and, instead, would have insisted on proceeding to trial, and, therefore, he failed to demonstrate that the issues raised were debatable among jurists of reason, that a court could have resolved the issues in a different manner or that the questions raised deserved encouragement to proceed further.

Argued November 28, 2017—officially released April 3, 2018

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Fuger, J.*; judgment denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Peter Tsimbidaros*, for the appellant (petitioner).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attor-

ney, and *Tamara A. Grosso*, assistant state's attorney, for the appellee (respondent).

*Opinion*

ALVORD, J. The petitioner, Derek Humble, appeals from the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal and improperly rejected his claim that his trial counsel rendered ineffective assistance. Specifically, the petitioner claims that his trial counsel rendered ineffective assistance by (1) failing to adequately investigate exculpatory evidence, and (2) misadvising him to plead guilty to murder. We conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal. Accordingly, we dismiss the appeal.

The record reveals the following facts and procedural history. On March 24, 2004, the petitioner shot and killed the victim, Victor Blue, inside Melissa's Market in Hartford. The state charged the petitioner, in two criminal cases, with murder in violation of General Statutes § 53a-54a, criminal use of a firearm in violation of General Statutes § 53a-216, criminal possession of a firearm in violation of General Statutes § 53a-217, and escape in the first degree in violation of General Statutes § 53a-169.[1] The court appointed Attorney Robert J. Meredith of the Public Defender's Office to represent the petitioner. On May 26, 2005, the petitioner pleaded guilty, pursuant to the *Alford* doctrine,[2] to murder and criminal use of a firearm.[3] The petitioner also pleaded guilty to carrying a pistol without a permit and escape in the first degree.

At the time of the plea, the court, *Miano, J.*, canvassed the petitioner, asking in relevant part whether the petitioner had an opportunity to speak with counsel, whether the petitioner was satisfied with counsel, whether the petitioner understood the state's allegations, and whether the petitioner understood that, by pleading guilty, he was giving up his rights to have a trial by jury or judge, to confront and cross-examine the state's witnesses, to remain silent, to have the state prove every element of the offenses beyond a reasonable doubt, and to present a defense.[4] The court also explained the factual bases for the pleas, the elements of the crimes charged, and the maximum sentences the petitioner could receive. The court explained: "[Y]our exposure here for these crimes, if my arithmetic is correct, is not less than twenty-five years, nor more than seventy-five years, plus fines." After concluding the canvass, the court found that the petitioner's pleas were knowing, voluntary, and intelligently made with the effective assistance of counsel, and accepted the petitioner's guilty pleas. The court sentenced the petitioner to thirty years imprisonment pursuant to an agreed upon recommendation between the petitioner and the

state. The petitioner did not file a direct appeal from his conviction.

On September 28, 2015, the petitioner filed an amended petition for a writ of habeas corpus, in which he alleged one count of ineffective assistance of his trial counsel. Specifically, he claimed that Attorney Meredith failed to conduct an adequate investigation of the case, and to interview all eyewitnesses to the shooting. The petitioner also claimed that Attorney Meredith advised him to plead guilty without thoroughly investigating a potential defense of self-defense.[5] A trial commenced before the habeas court, *Fuger, J.*, on June 14, 2016.

The habeas court was presented with evidence of the following facts. The killing was the result of "bad blood" that existed between the petitioner and his friends and the victim and his friends. On March 23, 2004, in response to learning that the victim "had family members or so that . . . wanted to do bodily harm" to him, the petitioner traveled to Clark Street in Hartford, where he knew the victim hung out, to "shake him up a little bit." The petitioner robbed the victim at gunpoint. Later that evening, as the petitioner was walking with his friend, Jason Barclay, a man "came out the—one of the driveways, made a comment, pulled out a gun and started shooting at us." The petitioner returned fire, heard police sirens, and ran.

The next day, on March 24, the petitioner left his cell phone at Melissa's Market to charge. Later that day, Patrick Ward, a friend of the petitioner, informed him that the victim had been bragging about shooting at him the night before. When the petitioner returned to the store to retrieve his cell phone, Raymond Rodriguez informed the petitioner that the victim and another man were at the store looking for him earlier that day. The petitioner observed the victim and Naquan Hartage, whom the petitioner knew, exit the store. The victim and the petitioner "made eye contact." The petitioner entered the store to retrieve his cell phone. As the petitioner was reaching for his cell phone, it rang. Ward was calling to warn the petitioner that the victim was returning to the store. The petitioner observed the victim walking toward the store. The petitioner was standing in a "little cubbyhole off to the side" near the entrance of the store. According to the petitioner, the victim entered the store, looked at the petitioner, took a few steps, turned around, and reached for a gun. At that point, the petitioner pulled out a gun and shot the victim multiple times. The petitioner fled the store. As the petitioner was running out of the store, he noticed Hartage running into the store.

Following the shooting, Hartage gave a voluntary statement to the police in which he identified the petitioner as the shooter.[6] The police arrested the petitioner on March 31, 2004, in Mississippi. After police arrested the petitioner, he signed a voluntary statement in which

he confessed to killing the victim, but claimed to have done so in self-defense. On May 18, 2004, Ward also gave a voluntary statement to the police, in which he corroborated the petitioner's claim that, on March 24, the victim was seeking the petitioner out in retaliation for the March 23 robbery.[7] Ward also told police that immediately following the shooting, he ran into Melissa's Market and observed Hartage removing a gun from the victim's hand. The police did not recover a gun on the victim's body.

In an oral decision, the habeas court denied the amended petition for a writ of habeas corpus, finding that the petitioner had failed to satisfy the requirements of *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The petitioner then filed a petition for certification to appeal, which the habeas court denied. This appeal followed.

We first set forth our standard of review. "Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits." (Internal quotation marks omitted.) *Morris* v. *Commissioner of Correction*, 131 Conn. App. 839, 842, 29 A.3d 914, cert. denied, 303 Conn. 915, 33 A.3d 739 (2011). "A petitioner may establish an abuse of discretion by demonstrating that the issues are debatable among jurists of reason . . . [the] court could resolve the issues [in a different manner] . . . or . . . the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Clinton S.* v. *Commissioner of Correction*, 174 Conn. App. 821, 826, 167 A.3d 389, cert. denied, 327 Conn. 927, 171 A.3d 59 (2017).

"We examine the petitioner's underlying claim[s] of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Morris* v. *Commissioner of Correction*, supra, 131 Conn. App. 842.

"[I]n order to determine whether the petitioner has demonstrated ineffective assistance of counsel [when the conviction resulted from a guilty plea], we apply the two part test annunciated by the United States Supreme Court in *Strickland* and *Hill* [v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d (1985)]. . . . In *Strickland*, which applies to claims of ineffective assistance during criminal proceedings generally, the United States Supreme Court determined that the claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . .

"To satisfy the performance prong under *Strickland-Hill*, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . A petitioner who accepts counsel's advice to plead guilty has the burden of demonstrating on habeas appeal that the advice was not within the range of competence demanded of attorneys in criminal cases. . . . The range of competence demanded is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . Reasonably competent attorneys may advise their clients to plead guilty even if defenses may exist. . . . A reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance. . . .

"To satisfy the prejudice prong [under *Strickland-Hill*], the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Citations omitted; internal quotation marks omitted.) *Clinton S.* v. *Commissioner of Correction*, supra, 174 Conn. App. 827–28.

With this legal framework in mind, we now turn to the merits of the petitioner's claims.[8]

## I

The petitioner first claims that the court abused its discretion in denying his petition for certification to appeal because his trial counsel rendered ineffective assistance by failing to "investigate available exculpatory evidence" that would have supported the petitioner's claim of self-defense. Specifically, he argues that Attorney Meredith "failed to conduct a thorough and adequate investigation by interviewing eyewitnesses who were at Melissa's Market the day of the shooting and witnesses who corroborated that Blue went to the store with a gun in order to kill Mr. Humble." He contends that "had trial counsel unearthed this evidence,

a viable self-defense claim would have been established which would have led him not to plead guilty to murder." We are not persuaded.

The habeas court was presented with evidence of the following additional facts, which are relevant to the petitioner's claim. The petitioner testified that he "adamantly" discussed a defense of self-defense with Attorney Meredith. He testified that he informed Attorney Meredith of potential witnesses that might be helpful, including Barclay and Rodriguez, who Attorney Meredith did not interview prior to the petitioner's guilty plea. The petitioner further testified that he communicated to Attorney Meredith that he wanted to go to trial, but Attorney Meredith insisted, "you have no defense. If you go to trial you will lose."

Barclay testified that in the late afternoon on March 24, 2004, he went inside Melissa's Market to make a drug sale in the back of the store. He heard gunfire, waited for it to stop, and then ran. As he ran out of the store, Barclay saw the victim lying on the ground. He saw Hartage, whom he knew in passing, leaning over the body and doing what appeared to be removing a gun from the victim's right hand. He did not witness the shooting. Barclay never spoke to the police about what he saw, and he never spoke to Attorney Meredith or his investigator.

The petitioner also presented the testimony of Rodriguez, who is known by the nickname "Primo." When questioned as to whether he recalled the events of March 24, 2004, he responded: "Not really. It's been so long. I don't remember shit. I smoke weed. I smoke dust. I got so much shit going on my brain, car accident, motorcycle accident. I don't remember nothing right now." In response to questioning as to whether he told the petitioner's investigator that after the shooting, he went into the store and saw a gun being removed from the victim, Rodriguez testified: "No. He's a Goddamn liar for that one. He's lying."[9]

Attorney Meredith testified about his representation of the petitioner twelve years prior to the habeas trial. He testified that from the beginning of his representation of the petitioner, he was aware that the petitioner was claiming that he killed the victim in self-defense. He testified that Ward corroborated the petitioner's claim, both in a voluntary statement to the police and during an interview with the defense's investigator, that Hartage removed a gun from the victim's body immediately following the shooting. He claimed that he advised the petitioner that Ward corroborated his story. His investigator interviewed Hartage twice, however, and "he didn't ever say that he took a gun off the body." He testified that his investigator attempted to contact Rodriguez three times, but was unsuccessful, and that he had no records of any contact with Barclay.

Attorney Meredith further testified that he discussed self-defense with the petitioner "[t]hroughout the case." He recognized three issues, however, with the claim of self-defense: (1) the police did not recover a gun on the body of the victim and there was no evidence that a second gun was discharged within the store, (2) the robbery that happened the day before the shooting, if charged, could increase the petitioner's sentence exposure by up to twenty-eight years and call into question a self-defense claim, and (3) "the jury could interpret an ongoing problem of a feud between the two parties which started the day before with Mr. Humble robbing the victim with the victim then shooting at Mr. Humble and with both parties being—going at one another if you will." He acknowledged that having another witness to corroborate the petitioner's claim that a gun was removed from the victim's body following the shooting would have been helpful, but he was "still left with the robbery that happened the day before that did not put Mr. Humble in a good light. . . . I think a big piece of analysis besides the gun on the body, the second piece was, you know, that factual scenario where our claim was self-defense and Mr. Humble was always self-defense from the very beginning, could also be interpreted as Mr. Humble waiting for that guy to come in so he could kill him."

The court concluded that the petitioner's claim failed on *Strickland*'s performance prong, finding that Attorney Meredith conducted an adequate investigation. The court reasoned that "none of the evidence that this court heard in the trial of this habeas petition was new evidence in the sense that it brought new facts to light that Mr. Meredith was not aware of." The court explained: "Now in this case there was a potentially viable self-defense argument that could have been raised by Mr. Humble. The facts contained within the exhibits, the testimony, clearly show that the issue of a self-defense defense was present. But self-defense is an extremely risky defense to raise primarily because if it fails, then conviction on the underlying offense is almost a virtual certainty.

"When self-defense is raised the fact that a death occurred, that fact that the petitioner . . . caused the death is not really at issue. What's at issue is whether that was a justified homicide. In other words, by acting in self-defense the homicide was not criminal instead was excused because it was self-defense.

"Now having said that there was a potential self-defense that could have been raised in this case does not say that that was a winner of defense. There are numerous factors that came out in the exhibits and the testimony that demonstrate that the use of a self-defense defense in this particular case was extraordinarily risky."

The court further made findings indicating that the petitioner had also failed to satisfy *Strickland*'s prejudice prong. In its oral decision, the court concluded that "[t]here was a strong incentive for Mr. Humble to take the thirty year offer." The court noted that the petitioner's exposure was "in the vicinity of seventy-five years," and that even if the jury believed the self-defense theory, it would not reduce the petitioner's liability for the gun or escape charges. The court ultimately concluded that, based on its assessment of the evidence, a jury would be unlikely to believe the petitioner's claim of self-defense, and the petitioner was likely to receive a "significantly higher" sentence than the thirty years he received. Thus, the court concluded: "He decided—from the evidence presented it is clear that Mr. Humble decided to take the safe route, albeit still harsh, and accept the thirty years."

The following legal principles are relevant to our resolution of the petitioner's claim on appeal. "[C]onstitutionally adequate assistance of counsel includes competent pretrial investigation." (Internal quotation marks omitted.) *Clinton S.* v. *Commissioner of Correction*, supra, 174 Conn. App. 836. "We are mindful of the principle that, although it is incumbent on a trial counsel to conduct a prompt investigation of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction . . . counsel need not track down each and every lead or personally investigate every evidentiary possibility. . . . In a habeas corpus proceeding, the petitioner's burden of proving that a fundamental unfairness had been done is not met by speculation . . . but by demonstrable realities. . . . One cannot successfully attack, with the advantage of hindsight, a trial counsel's trial choices and strategies that otherwise constitutionally comport with the standards of competence." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 583–84, 941 A.2d 248 (2008). "The burden to demonstrate what benefit additional investigation would have revealed is on the petitioner." (Internal quotation marks omitted.) *Clinton S.* v. *Commissioner of Correction*, supra, 836.

We conclude that the habeas court did not abuse its discretion in denying certification to appeal. We need only address the petitioner's failure to satisfy the prejudice prong. See *Petty* v. *Commissioner of Correction*, 125 Conn. App. 185, 188, 7 A.3d 411 (2010) ("[a] reviewing court can find against a petitioner on either ground, whichever is easier" [internal quotation marks omitted]), cert. denied, 300 Conn. 903, 12 A.3d 573 (2011). The petitioner has failed to satisfy his burden of showing a reasonable probability that had Attorney Meredith interviewed Barclay and Rodriguez, he would have rejected the state's plea offer and insisted on going to trial. Notably, the petitioner did not testify to this

effect. Furthermore, nothing in the record suggests that the petitioner would have rejected the state's plea offer and insisted on going to trial. In fact, the record suggests that, to the contrary, the petitioner was aware that at least one witness, Ward, corroborated his claim that the victim had a gun when the petitioner shot and killed him. Despite this knowledge, the petitioner still chose to accept the state's offer and plead guilty.

We note that "[i]n many guilty plea cases, the prejudice inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate . . . the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." (Internal quotation marks omitted.) *Norton* v. *Commissioner of Correction*, 132 Conn. App. 850, 855, 33 A.3d 819, cert. denied, 303 Conn. 936, 36 A.3d 695 (2012).

The petitioner has failed to show that the discovery of additional evidence likely would have led counsel to change his recommendation as to the plea, or changed the outcome of a trial. To the contrary, Attorney Meredith testified that while it would have been helpful if another witness corroborated the petitioner's claim that a gun was removed from the victim's body following the shooting, he still had other concerns, including: (1) the fact that the police did not recover a second gun; (2) there was no evidence that a second gun was discharged in the store; (3) the robbery the night before the shooting would cast the petitioner in a negative light to a jury; (4) the robbery the night before could increase any sentence by up to twenty-eight years; and (5) the jury could interpret the incident in Melissa's Market to be part of an ongoing feud between the petitioner and the victim, which the petitioner started when he robbed the victim the night before. The habeas court echoed some of these concerns in its oral decision. Specifically, the court noted that (1) the March 23 robbery "would be enough to defeat a self-defense argument in and of itself," and (2) "the scenario that took place inside Melissa's Market could be construed to be self-defense on the part of Mr. Humble but it also lent itself quite easily and readily to an argument by the prosecution that rather than being self-defense, this in fact was an ambush designed to strike at Mr. Blue before he had another opportunity to strike at Mr. Humble."

Not only had a witness identified the petitioner as the person who shot and killed the victim, but the petitioner voluntarily confessed to the killing. The petitioner also

voluntarily confessed to his ongoing feud with the victim, one that began when he robbed the victim at gunpoint to "shake him up a little bit." We agree with the habeas court that although the petitioner could have presented a self-defense claim if he went to trial, there were "numerous factors that came out in the exhibits and the testimony that demonstrate that the use of a self-defense defense in this particular case was extraordinarily risky" and "significant reasons to believe that a jury would not buy the argument of self-defense."

Furthermore, at the time of the petitioner's guilty plea, the petitioner had two pending criminal cases that exposed him to significant jail time. The habeas court correctly observed that even if a jury believed the petitioner's claim of self-defense, that defense would not "in any way go to reduce liability for the gun or the escape from custody charge." The petitioner had no defense for those charges. The petitioner's guilty plea ultimately consolidated and disposed of his numerous pending charges into a sentence of thirty years imprisonment. As the habeas court observed, the petitioner's exposure was "in the vicinity of seventy-five years," and "[t]here was a strong incentive for Mr. Humble to take the thirty year offer." We also agree with the court's observation that: "[T]he petitioner could have taken his case to trial. He could have rolled the dice. He could have raised the defense of self-defense which if the jury had accepted it might have resulted in a sentence lower than the thirty years that he agreed to. On the other hand, if the jury did not accept the issue of self-defense, and this court believes there are significant reasons to believe that a jury would not buy the argument of self-defense, Mr. Humble would have received a sentence that was significantly higher than the thirty years that he agreed to. . . . He decided—from the evidence presented it is clear that Mr. Humble decided to take the safe route, albeit still harsh, and accept the thirty years." Simply put, even if we were to assume that Attorney Meredith failed to discover potential evidence that corroborated the victim's self-defense claim, in light of our review of the record, we conclude that the petitioner's claim that he would have pursued a jury trial is speculative at best.[10]

## II

The petitioner next claims that the court abused its discretion in denying his petition for certification to appeal because his trial counsel rendered ineffective assistance by advising him to plead guilty to murder without conducting an adequate investigation, and failing to provide candid, objectively reasonable advice.[11] We are not persuaded.

The habeas court was presented with evidence of the following additional facts, which are relevant to the petitioner's claim. At the habeas trial, Attorney Meredith testified that during the underlying criminal proceed-

ings, the petitioner informed him that he would be willing to plead guilty to manslaughter. The state, however, did not offer a plea deal that would allow the petitioner to plead guilty to manslaughter, and instead offered the petitioner a recommended sentence of thirty years if he pleaded guilty to murder. The petitioner testified that when Attorney Meredith presented this offer, he informed Attorney Meredith that he felt as though he had a strong claim of self-defense and did not want to accept the offer. The petitioner testified that Attorney Meredith contacted his mother and told her that the petitioner had no defense and would serve sixty years in jail if he rejected the deal. The petitioner testified that he decided to accept the thirty year offer rather than go to trial because his mother was pressuring him, Attorney Meredith said he had no defense, and Attorney Meredith advised him that he would "be able to get back into court under the *Alford* doctrine . . . ."[12]

Attorney Meredith testified as to his practice for advising clients in connection with plea offers: "I do not—what I try to do with each and every client from the time I've been a criminal defense attorney is to present—to go through discovery, do an independent investigation, and try—try to present what might play it out in a trial from an [objective] point of view. I have not motive to try to get a client to plead or not. As long as I know a client understands the risk of going to trial, as long as I know the client understands the offer and if I'm sure of those two things, then I can sleep at night. I'm dealing with a grown man and they make their decisions from there on or woman as the case may be. So I don't pressure clients. I try to inform them objectively in term—and then they make the decision on their own."

The habeas court concluded that nothing in the record supported "any conclusion that Mr. Humble's plea of guilty was anything other than voluntary, intelligent, and willing, as willing as any person who pleads guilty to a serious offense's plea is willing." The court further noted that "in this case Mr. Humble was presented with a potential for spending the entirety of his natural life locked up in a jail. He was offered the opportunity to plead guilty for a global settlement in exchange a sentence of thirty years.

"Now I realize to a twenty-two year old a thirty year sentence is not insignificant and I don't mean to seem at all callous because a thirty year sentence is significant irrespective of the age of the person who is receiving it. But given the acceptance of that plea, the possibility that Mr. Humble will gain freedom, albeit later in his life, exists. I see nothing in this evidence that was presented to this court that would allow me to conclude that Mr. Humble's will was overborne in any way."

Based on our review of the record, we conclude that the habeas court did not abuse its discretion in denying

the petition for certification to appeal. We have already concluded in part I of this opinion that the petitioner has failed to satisfy *Strickland-Hill*'s prejudice prong, and we conclude the same in regard to this claim. The petitioner has not demonstrated that but for Attorney Meredith's advice, he would have rejected the plea offer and insisted on proceeding to trial. As discussed in more detail in part I of this opinion, the petitioner similarly has not persuaded this court that any additional evidence likely would have changed counsel's advice. Furthermore, the habeas court's conclusion that the petitioner's plea was voluntary and intelligent is supported by the plea transcript, which contains a lengthy canvass by the trial court. See *Bigelow* v. *Commissioner of Correction*, 175 Conn. App. 206, 215–16, 167 A.3d 1054 ("[a] court may properly rely on . . . the responses of the [petitioner] at the time [he] responded to the trial court's plea canvass" [internal quotation marks omitted]), cert. denied, 327 Conn. 929, 171 A.3d 455 (2017).

We conclude that the petitioner has failed to demonstrate that the issues raised are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions deserve encouragement to proceed further. Accordingly, the habeas court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The escape charge arose from an unrelated incident.

[2] "Under *North Carolina* v. *Alford*, [400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)], a criminal defendant is not required to admit his guilt, but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless. . . . In *North Carolina* v. *Alford*, supra, the United States Supreme Court treated such guilty pleas as the functional equivalent of a plea of nolo contendere." (Citations omitted; internal quotation marks omitted.) *White* v. *Commissioner of Correction*, 145 Conn. App. 834, 847 n.3, 77 A.3d 832, cert. denied, 310 Conn. 947, 80 A.3d 906 (2013).

[3] The court vacated the plea with respect to the criminal use of a firearm charge. See General Statutes § 53a-216 (a) ("[n]o person shall be convicted of criminal use of a firearm . . . and the underlying felony upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information").

[4] The court explained in relevant part: "[B]y pleading guilty to these crimes, either a straight plea or under the *Alford* doctrine, these are the rights you are giving up forever concerning all these cases, concerning each and every one. . . .

"[Y]ou are . . . giving up your right by pleading guilty to put forward any kind of defense you might have to these crimes.

"For example, let's say you had a defense that you were in Florida at the time of this killing, that's what's called an alibi. And by pleading guilty you can't put forward that defense or any defense you might have."

When the court asked the petitioner whether he understood the rights that he was giving up by pleading guilty, the petitioner responded, "yup."

[5] In the amended petition, the petitioner also claimed that Attorney Meredith failed to advise him about a possible defense of extreme emotional disturbance. The petitioner has abandoned that claim.

[6] Specifically, Hartage claimed that, while walking outside of the store, he heard gunshots and saw the petitioner, whom he knew by his nickname

"Roscoe," run out of the store with a gun.

[7] Specifically, Ward claimed that before the shooting on March 24, the victim showed him a gun and said, "[t]ell your boy Rosco I'm gonna kill him!"

[8] The respondent asserts that the petitioner argues only the merits of his appeal, as if this were an appeal from a decision of a habeas court granting certification to appeal. Specifically, the respondent argues: "This case exemplifies how Justice Borden's fears have come to fruition. The manner in which the petitioner has structured his argument shows that the *Simms* procedure has simply served as an 'implied invitation to appeal, directed to all disappointed habeas petitioners denied certification to appeal,' and that the certification requirement has since 'become an empty gesture.' *Simms* v. *Warden*, [supra, 229 Conn. 191–92] (*Borden, J.*, concurring)." The respondent urges this court to "reevaluate the *Simms* procedure and adopt a procedure akin to Practice Book § 84-1 et seq. and that used in federal habeas litigation, whereby a petitioner denied certification to appeal from the habeas court must file a petition for certification with the Appellate Court to obtain a certificate of appealability."

Although we are very familiar with the respondent's concern that the certification to appeal requirement of General Statutes § 52-470 (g) has turned into a "hollow command" in light of the standard of review that our Supreme Court enunciated in *Simms* v. *Warden*, supra, 229 Conn. 178, and adopted in *Simms* v. *Warden*, supra, 230 Conn. 612, we decline the invitation to reevaluate the *Simms* procedure. "[T]his court will not reexamine or reevaluate Supreme Court precedent. Whether a Supreme Court holding should be reevaluated and possibly discarded is not for this court to decide." (Internal quotation marks omitted.) *State* v. *Billie*, 123 Conn. App. 690, 706, 2 A.3d 1034 (2010).

[9] The petitioner called his counsel's investigator, Eric Eichler, to contradict this testimony. The court, however, admitted Eichler's testimony about Rodriguez' statements regarding the shooting only to impeach Rodriguez' testimony that he had no memory of the shooting. The court explained: "Well I'm going to give it absolutely zero weight as to the—whatever he says Mr. Rodriguez might have said. . . . [S]ince he said he knew nothing, even if you impeach him that he knew something, I still don't know what he knew. . . . [A]ll Mr. Eichler's going to be able to establish is that Mr. Rodriguez was not being forthcoming."

[10] In *Carraway* v. *Commissioner of Correction*, 144 Conn. App. 461, 476, 72 A.3d 426 (2013), appeal dismissed, 317 Conn. 594, 119 A.3d 1153 (2015), this court held that in order to satisfy the prejudice requirement in an ineffective assistance claim arising from counsel's advice during the plea process, a defendant only must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial, not that he would have insisted on trial *and* achieved a more favorable outcome. The United States Supreme Court, however, recently observed: "The dissent contends that a defendant must also show that he would have been better off going to trial. That is true when the defendant's decision about going to trial *turns on his prospects of success and those are affected by the attorney's error*—for instance, where a defendant alleged that his lawyer should have but did not seek to suppress an improperly obtained confession. . . . [C]f., e.g., *Hill* [v. *Lockhart*, supra, 474 U.S. 59] (discussing failure to investigate potentially exculpatory evidence)." (Citation omitted; emphasis added.) *Lee* v. *United States*, U.S. , 137 S. Ct. 1958, 1965, 198 L. Ed. 2d 476 (2017). While we note this apparent conflict, we need not determine today which standard applies because the petitioner has failed to show prejudice under the more lenient *Carraway* standard.

[11] For the first time on appeal, the petitioner raises a claim pursuant to *Barlow* v. *Commissioner of Correction*, 150 Conn. App. 781, 93 A.3d 165 (2014), in which this court held that an attorney's decision to offer *no advice* regarding a state's plea offer constituted constitutionally deficient performance. Id., 801–802. Specifically, the petitioner claims that "[h]ere, as in *Barlow*, trial counsel failed to render candid advice whether it was in the [petitioner's] best interest to accept the state's offer or consider alternatives before [he] plead." The respondent argues that this claim is not properly before this court, as it was never pleaded in the operative habeas petition nor decided by the habeas court.

*Barlow* dealt only with the performance prong of *Strickland*. See id., 803–804 (concluding that record was lacking regarding prejudice and remanding for further proceedings on the issue of whether defendant was prejudiced by counsel's deficient performance). Because we conclude that

the petitioner has failed to show prejudice, and do not address whether Attorney Meredith's performance was deficient, we need not address the petitioner's *Barlow* claim.

[12] Although the petitioner, at the habeas trial, testified that Attorney Meredith incorrectly advised him that the *Alford* doctrine would permit him to "get back into court and win my freedom back," he does not claim on appeal that this advice constituted ineffective assistance. Furthermore, the court was free to reject the petitioner's testimony as not credible; see *Noze* v. *Commissioner of Correction*, 177 Conn. App. 874, 887, 173 A.3d 525 (2017); which, given its conclusion that counsel "gave proper legal advice to Mr. Humble and Mr. Humble made the decision to accept the plea offer," it clearly did.

————————————————