******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBERT S. *v.* COMMISSIONER OF CORRECTION*
(AC 41895)

Keller, Bright and Bear, Js.

*Syllabus*

The petitioner sought a writ of habeas corpus, claiming, inter alia, that his
trial counsel had provided ineffective assistance by failing to investigate
the viability of an intoxication defense. The petitioner had pleaded guilty,
under the *Alford* doctrine, to various charges in connection with the
stabbing deaths of two children. The plea agreement allowed the peti-
tioner to avoid the death penalty, and he received a total effective
sentence of life in prison with no possibility of release. The habeas
court rendered judgment denying the habeas petition and, thereafter,
denied the petition for certification to appeal, and the petitioner appealed
to this court. *Held* that the habeas court did not abuse its discretion
in denying the petition for certification to appeal, the record having
supported that court's conclusion that trial counsel's strategy in not
presenting an intoxication defense did not constitute ineffective assis-
tance: the habeas court properly determined that the petitioner failed
to satisfy his burden of overcoming the presumption that trial counsel's
decision not to raise an intoxication defense was a reasonable trial
strategy, the petitioner's claim that had trial counsel properly investi-
gated and informed him of a possible intoxication defense, there was
a reasonable probability that he would not have pleaded guilty was
unavailing, as trial counsel adequately investigated and informed the
petitioner of the availability and effectiveness of an intoxication defense,
and properly advised him that an intoxication defense would likely have
failed and that if he had gone to trial he would have faced a possible
death sentence, and although the petitioner claimed that he was under
the influence of drugs at the time of the murders in support of his
intoxication claim, no evidence of the drug he purportedly ingested was
recovered, the petitioner denied being under the influence of drugs
to the police immediately following the murders, and the results of
psychological tests obtained by the petitioner's trial counsel suggested
that any ingestion of drugs immediately prior to the murders may have
been voluntary and did not support a potential defense of intoxication;
accordingly, the petitioner failed to establish that the issues he raised
were debatable among jurists of reason, that a court reasonably could
have resolved them differently, or that they raised questions deserving
further appellate scrutiny.

Argued September 11—officially released November 19, 2019

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland and tried to the court, *Sferrazza, J.*; judgment
denying the petition; thereafter, the court denied the
petition for certification to appeal, and the petitioner
appealed to this court. *Appeal dismissed.*

*James E. Mortimer*, assigned counsel, for the appel-
lant (petitioner).

*Lawrence J. Tytla*, supervisory assistant state's attor-
ney, for the appellee (respondent).

*Opinion*

BEAR, J. The petitioner, Robert S., appeals following the denial of his amended petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) abused its discretion in denying his petition for certification to appeal and (2) improperly concluded that he failed to establish that he had received ineffective assistance from his trial counsel because they failed to conduct a proper investigation and to advise him of the viability of an intoxication defense. We conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal and, accordingly, dismiss the petitioner's appeal.

The habeas court's memorandum of decision sets forth the following relevant facts and procedural history: "In the early hours of April 20, 2004, in New London, the petitioner visited the apartment of his former girlfriend [F, who was also the mother of his son]. While there, he stabbed [F] multiple times as well as stabbing a neighbor . . . . While [F] sought refuge in [the neighbor's] apartment, the petitioner barricaded himself, his fifteen month old son . . . and [F's] ten year old sister . . . in [F's] apartment.

"When the police arrived and pleaded with the petitioner to permit them to enter the apartment, the petitioner falsely warned them that he had a gun and would commence shooting if anyone tried to enter. The police could hear [F's sister] screaming for help but could not break down the metal door to the apartment.

"Eventually, the petitioner unlocked the door, and the police discovered that the petitioner stabbed to death [both children]. The petitioner stabbed [F's sister] eleven times frontally and ten times in her back. She had six wounds to her neck. The petitioner stabbed [his son approximately] fourteen times, the blows distributed to the toddler's neck, scalp, chest, and abdomen. . . .

"[T]he petitioner faced capital felony charges which allowed for imposition of the death penalty or life imprisonment without possibility of parole upon conviction. Murder of two persons in the course of a single transaction was a capital felony in 2004. See General Statutes § 53a-54b (7). The petitioner previously withdrew claims involving retroactive application of *State* v. *Santiago*, 318 Conn. 1, [122 A.3d 1] (2015).[1]

"A bifurcation of the criminal trial into proceedings determining guilt and those pertaining to penalty was required in death penalty cases. See General Statutes § 53a-46a. Upon conviction of a capital offense, the fact finder then received evidence and argument concerning the existence or nonexistence of aggravating and mitigating circumstances in weighing whether the death

penalty was appropriate. If not, then the accused received a life sentence without possibility of parole.

"After extensive investigation . . . [the petitioner's trial counsel], Attorneys [Bruce] Sturman and [Fred] DeCaprio,[2] were able to negotiate a plea disposition to the charges [against the petitioner] in exchange for the state's abandonment of its quest for the death penalty. On May 11, 2007, the petitioner pleaded guilty pursuant to that agreement [under the *Alford*[3] doctrine]." (Footnotes added.)

On January 22, 2014, the petitioner, then a self-represented litigant, filed a petition for a writ of habeas corpus. The petitioner subsequently requested and was appointed habeas counsel. On May 18, 2016, the petitioner amended his petition for a writ of habeas corpus, which was predicated on the alleged ineffective assistance of trial counsel. Specifically, the petitioner alleged that "[trial counsel] erroneously advised him that he had no viable defenses or evidence to mitigate the charges against him arising from intoxication; that [trial counsel] failed to investigate and research the law properly concerning intoxication as a defense or mitigant; that [trial counsel] afforded him insufficient time to consider the proposed plea disposition; that [trial counsel] misinformed him that a sentence to life imprisonment without possibility of parole was equivalent to a sixty year sentence; and misinformed him that he would become eligible for parole at such time." At the habeas trial on May 24, 2018, the habeas court heard testimony from the petitioner and his trial counsel.

The habeas court, *Sferrazza, J.*, in its May 31, 2018 memorandum of decision, denied the petitioner's amended petition for a writ of habeas corpus. On June 8, 2018, the petitioner filed a petition for certification to appeal, which the habeas court denied. This appeal followed. Additional facts will be set forth where necessary.

The petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal. We disagree.

"We begin by setting forth the applicable standard of review and procedural hurdles that the petitioner must surmount to obtain appellate review of the merits of a habeas court's denial of the habeas petition following denial of certification to appeal. In *Simms* v. *Warden*, 229 Conn. 178, 187, 640 A.2d 601 (1994), [our Supreme Court] concluded that . . . § 52-470 (b) prevents a reviewing court from hearing the merits of a habeas appeal following the denial of certification to appeal unless the petitioner establishes that the denial of certification constituted an abuse of discretion by the habeas court. In *Simms* v. *Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994), [our Supreme Court] incorporated the factors adopted by the United States

Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as the appropriate standard for determining whether the habeas court abused its discretion in denying certification to appeal. This standard requires the petitioner to demonstrate that the [resolution of the underlying claim involves] issues [that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . A petitioner who establishes an abuse of discretion through one of the factors listed above must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Emphasis omitted; internal quotation marks omitted.) *Blake* v. *Commissioner of Correction*, 150 Conn. App. 692, 695, 91 A.3d 535, cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014). "In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 181 Conn. App. 572, 578, 187 A.3d 543, cert. denied, 329 Conn. 909, 186 A.3d 13 (2018). Furthermore, "this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Ricardo R.* v. *Commissioner of Correction*, 185 Conn. App. 787, 797, 198 A.3d 630 (2018), cert. denied, 330 Conn. 959, 199 A.3d 560 (2019).

In determining whether there has been an abuse of discretion, every reasonable presumption should be given by this court in favor of the correctness of the habeas court's ruling, and reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. See *Peeler* v. *Commissioner of Correction*, 161 Conn. App. 434, 443, 127 A.3d 1096 (2015). Having set forth the appropriate standard of review, we next consider the petitioner's claims.

The petitioner claims that the habeas court improperly concluded that he received effective assistance of counsel. Specifically, the petitioner argues that trial counsel provided ineffective assistance both by failing to raise the defense of intoxication to mitigate the charges of capital murder and by failing to advise him about the viability of such a defense. We are not per-

suaded.

The following principles guide our review of a claim of ineffective assistance of counsel. After a guilty plea has been entered by a defendant and accepted by the court, "[i]n order to determine whether the petitioner has demonstrated ineffective assistance of counsel [when the conviction resulted from a guilty plea], we apply the two part test annunciated by the United States Supreme Court in [*Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] and [*Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)]. . . . In *Strickland*, which applies to claims of ineffective assistance during criminal proceedings generally, the United States Supreme Court determined that the claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . .

"To satisfy the performance prong under *Strickland-Hill*, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . A petitioner who accepts counsel's advice to plead guilty has the burden of demonstrating on habeas appeal that the advice was not within the range of competence demanded of attorneys in criminal cases. . . . The range of competence demanded is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . Reasonably competent attorneys may advise their clients to plead guilty even if defenses may exist." *Clinton S.* v. *Commissioner of Correction*, 174 Conn. App. 821, 827–28, 167 A.3d 389, cert. denied, 327 Conn. 927, 171 A.3d 59 (2017).

"It is axiomatic that decisions of trial strategy and tactics rest with the attorney. . . . Furthermore, our review of counsel's performance is highly deferential. . . . Indeed, [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . Our cases instruct that [s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." (Citations omitted; internal quotation marks omitted.) *Meletrich* v. *Commissioner*

*of Correction*, 332 Conn. 615, 627–28, 212 A.3d 678 (2019). "[Counsel's] decision not to call attention to the petitioner's intoxication falls into the category of trial strategy or judgment calls that we consistently have declined to second guess." (Internal quotation marks omitted.) *Ramey* v. *Commissioner of Correction*, 150 Conn. App. 205, 214, 90 A.3d 344, cert. denied, 314 Conn. 902, 99 A.3d 1168 (2014).

The petitioner argues that trial counsel's performance was deficient for failing to conduct an adequate investigation of the viability of an intoxication defense. Specifically, the petitioner argues that had trial counsel properly investigated and informed him of the availability of an intoxication defense, there is a reasonable probability that he would not have pleaded guilty.

We conclude that the record supports the habeas court's finding that the petitioner's trial counsel adequately investigated and informed the petitioner of the availability and effectiveness of an intoxication defense.

The habeas court found that within a few weeks following the petitioner's arrest and meeting with trial counsel, the petitioner communicated to them that he had smoked a blunt[4] in F's apartment prior to the murders. He claims that the blunt he smoked contained phencyclidine, commonly referred to as PCP, which resulted in his abhorrent behavior. One of his arguments regarding his ineffective assistance of counsel claim is that trial counsel failed to act on his representation to them that the blunt he smoked in F's apartment contained PCP. The habeas court found that trial counsel investigated this claim by examining reports and photographs from the scene of the crime compiled by members of the Connecticut State Police Major Crime Squad, after they searched and processed F's apartment. During the crime squad's examination of the crime scene, no blunt was recovered. Shortly after the petitioner had committed the murders, he was admitted to Lawrence + Memorial Hospital for treatment. While there, Sergeant Brian Wright of the New London Police Department asked the petitioner if he was under the influence of any drugs at the time of the murders. The petitioner denied being under the influence of any drugs during the relevant time period.

The petitioner also claims that trial counsel performed deficiently because they failed to have his blood and urine tested specifically for PCP. During the habeas proceeding, the court concluded that while the petitioner was at the hospital, samples of his blood and urine were collected by hospital staff pursuant to a search warrant. The habeas court further concluded that no evidence was adduced "that the material tested negative for PCP or other substances; that such a test was performed; or that such a test for PCP [was] even available."

Evidence presented at the habeas trial demonstrated that trial counsel had the petitioner evaluated by three mental health professionals who opined that the petitioner exhibited psychotic symptoms caused by frequent ingestion of drugs including, but not limited to, marijuana and PCP. The habeas court found that the results of the psychological tests did not support the potential defense of intoxication. Rather, the results suggest that if the petitioner ingested PCP before committing the murders, the ingestion may have been voluntary.

Furthermore, the habeas court found that in light of the overwhelming evidence supporting trial counsel's decision not to raise the defense of intoxication, "[d]efense counsel correctly informed the petitioner that under General Statutes § 53a-7,[5] intoxication only provided a defense to criminal conduct if that intoxication 'negate[d] an element of the crime.' Murder does require proof of the specific intent to kill. However, the acts incontrovertibly committed by the petitioner displayed specific intent to kill the children, despite the effects of intoxication. He stabbed each child several times including multiple mortal strikes to their throat and torso. He deterred the police from rescuing the children by claiming to have a firearm. This occurred while [F's sister] screamed for help. A reasonable inference would be that the petitioner employed that ruse in order to prevent the police from thwarting his mission to kill them." (Footnote added.) Additionally, the petitioner brought a bag containing knives to F's apartment on the night of the murders with no explanation as to why he had done so. The habeas court determined that this evidence demonstrated that the petitioner had acted with premeditation in committing the murders, and his intent undermined the viability of an intoxication defense at trial.

In its memorandum of decision, the habeas court concluded that, after considering the evidence in its totality in light of the capital charges, trial counsel, in their reasonable, professional judgment, properly advised the petitioner that an intoxication defense likely would have failed and that if he went to trial he would have faced a possible death sentence. Considering that trial evidence, the habeas court's conclusion was not an abuse of its discretion. "Indeed, we recognize that [t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. . . . [A] reviewing court is required not simply to give [the trial attorney] the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as [they] did . . . ." (Internal quotation marks omitted.) *Meletrich* v. *Commissioner of Correction*, supra, 332 Conn. 637.

On the basis of the foregoing, we conclude that the petitioner has not proven that the habeas court abused its discretion when it denied his petition for certification after concluding that trial counsel adequately investigated the viability of an intoxication defense, that the petitioner failed to satisfy his burden of overcoming the presumption that trial counsel's decision not to raise the defense of intoxication was a reasonable trial strategy, and that trial counsel's strategy did not constitute deficient performance.[6] We agree with the habeas court that the petitioner failed to establish that the issues he raises are debatable among jurists of reason, that they reasonably could be resolved by a court differently, or that they raise questions deserving further appellate scrutiny. See *McClain* v. *Commissioner of Correction*, 188 Conn. App. 70, 92, 204 A.3d 82, cert. denied, 331 Conn. 914, 204 A.3d 702 (2019). Thus, the habeas court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of family violence, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] At the habeas trial, the petitioner abandoned the first claim in his amended petition, and pursued the remaining claims: two, three, and four. In this appeal, the petitioner pursues only claims two and three. The petitioner's claims were as follows: "Claim One: *State* v. *Santiago*: The petitioner pleaded guilty to the charges prior to [our] Supreme Court's ruling in *State* v. *Santiago*. Therefore, the petitioner pleaded guilty to the charges not knowing that he would not be subjected to the death penalty if he lost at trial. Had the petitioner known that the death penalty would be repealed and that this repeal would be made retroactive, he would not have pleaded guilty and would have taken his case to trial. . . .

"Claim Two: Ineffective assistance of trial counsel: Counsel misled the petitioner regarding his possible trial strategies and defenses, which effectively confused him and coerced him to plead guilty. Counsel's actions constitute ineffective assistance of counsel. Had the petitioner fully understood the state's offer and had the time to consider it in light of his possible trial strategies and defenses, he would have rejected the plea and taken his case to trial. . . .

"Claim Three: Ineffective assistance of trial counsel: Counsel's failure to investigate the petitioner's involuntary intoxication claim caused the petitioner to misunderstand the strength of his case which coerced him to plead guilty. Counsel's actions constitute ineffective assistance of counsel. Had counsel performed proper investigation, the petitioner would have rejected the plea and taken his case to trial. . . .

"Claim Four: Ineffective assistance of trial counsel: Counsel's failure to discuss the plea offer with the petitioner or disclose its terms caused the petitioner to plead guilty to an unknown plea. Counsel's actions constitute ineffective assistance of counsel. Had counsel discussed the offer with the petitioner and disclosed its full terms, the petitioner would have rejected the plea and taken his case to trial."

[2] The habeas court found in its memorandum of decision that "[b]oth Attorney DeCaprio and Attorney Sturman were highly experienced criminal defense lawyers who had represented many clients charged with murder, including defendants facing capital offenses, before they represented the petitioner. Attorney Sturman was the public defender for the New London Judicial District, and Attorney DeCaprio was and had been a member of the chief public defender's capital murder unit for several years preceding the petitioner's case." Hereafter, any reference to "trial counsel" refers to Attorneys DeCaprio and Sturman.

[3] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). "A defendant who pleads guilty under the *Alford* doctrine does

not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea." *Parker* v. *Commissioner of Correction*, 169 Conn. App. 300, 303 n.3, 149 A.3d 174, cert. denied, 324 Conn. 903, 151 A.3d 1289 (2016).

[4] A "blunt" is a street term used to describe a cigar that has been hollowed out, filled with marijuana, and smoked to ingest the drug. See *State* v. *Sanchez*, 75 Conn. App. 223, 226 n.1, 815 A.2d 242, cert. denied, 263 Conn. 914, 821 A.2d 769 (2003).

[5] General Statutes § 53a-7 provides: "Intoxication shall not be a defense to a criminal charge, but in any prosecution for an offense evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged, provided when recklessness or criminal negligence is an element of the crime charged, if the actor, due to self-induced intoxication, is unaware of or disregards or fails to perceive a risk which he would have been aware of had he not been intoxicated, such unawareness, disregard or failure to perceive shall be immaterial. As used in this section, 'intoxication' means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body."

[6] To satisfy the second part of the *Strickland-Hill* test, the prejudice prong, "the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Clinton S.* v. *Commissioner of Correction*, supra, 174 Conn. App. 828; see also *Humble* v. *Commissioner of Correction*, 180 Conn. App. 697, 705, 184 A.3d 804 (2018). In light of our conclusion that trial counsel did not perform deficiently, we do not need to consider the prejudice prong of the *Strickland-Hill* test. See *Michael T.* v. *Commissioner of Correction*, 319 Conn. 623, 639, 126 A.3d 558 (2015) (our Supreme Court found that it "need not consider . . . or address the prejudice prong of the *Strickland* test" if petitioner fails to establish counsel provided ineffective assistance).